ZEPPOS et al. v. LEWIS.

No. 1526.

Municipal Court of Appeals for the District of Columbia.

Argued July 26, 1954.

Decided Sept. 1, 1954.

662

Denis K. Lane, Washington, D. C., with whom James K. Hughes, Washington, D. C., was on the brief, for appellants.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

On April 19, 1950, appellants, owners of a building known as Hecht's Hotel, petitioned the Administrator of Rent Control to fix a rent ceiling of $750 a month on the building unfurnished.[1] Accompanying the petition was a written statement by appellee

that he was negotiating for a lease of the building and was willing to pay $750 a month. The Administrator, however, fixed a ceiling of $650 a month and his order became effective May 26, 1950. On the following day, May 27, appellants leased the building to appellee for a term of ten years beginning June 1, 1950, at a monthly rental of $650, with a provision that such rent would be increased to $750 a month on expiration of the rent control act. The lease provided that the building should be used as a hotel or lodging house and at the same time the lease was executed appellants sold to appellee all of their rights in the "lodging house business" conducted on the premises, including furniture, furnishings and equipment, for a purported price of $31,000. This price was represented by $10,000 cash, two interest bearing notes secured by a chattel deed of trust and totalling $9,000, and an unsecured, nonnegotiable, non-interest bearing note for $12,000. The $12,000 note was payable $100 a month on the day the rent fell due and contained a provision that it should become null and void on expiration of the rent control act. On July 31, 1953, the date the rent control act expired, appellee brought this action, alleging that appellants for 38 months had collected from him excess rent of $100 each month, and asking judgment for double that amount or $7,600.

The trial court found as a fact that the sale price of the lodging house business was $19,000 and that the giving of the $12,000 note was a mere subterfuge to avoid the rent ceiling and that the monthly payments on that note in reality were payments for rent. Accordingly the court gave judgment for appellee for $7,200, representing double excess rent of $100 a month for 36 months.[2]

■ There is ample support in the evidence for the court's finding that the effect of the parties' arrangement was the payment of $750 a month rent. And the court was correct in ruling that the fact both parties

1. We refer to the building as a whole though actually it contains two ground floor stores which are in no way involved in this proceeding.

2. Recovery for payments prior to that period was barred by the statute of limitations.

knowingly participated in the arrangement was no defense to an action for overcharges under the rent act.[3] The only question requiring our consideraton is whether the leased premises for the period in issue were subject to rent control.

█ There is no doubt that under the original rent act of December 2, 1941, lodging houses were subject to control,[4] and no contention otherwise is made. The question is whether amendments to the rent act decontrolled lodging houses. The amendatory act of April 29, 1948, decontrolled "Any housing accommodations in hotels, which accommodations are used exclusively for transient occupancy, that is, for living quarters for nonresidents upon a short-time basis".[5] The amendatory act of June 30, 1950, contained the following provision:

"After June 30, 1950, the provisions of this Act shall not apply to, and no maximum rent ceiling or minimum service standards shall be prescribed for, any furnished nonhousekeeping housing accommodations which are rented as rooms without kitchen privileges or facilities for cooking (but not in a suite of two or more rooms), and when and for such period as any of the housing accommodations in any building used as a rooming house are decontrolled under this paragraph (a) the provisions of this Act shall not apply to, and no maximum rent ceilings or minimum service standards shall be prescribed for, such building." [6]

The rent act of 1951 excluded from its coverage: "(1) any of the accommodations in a hotel in which more than 60 per centum of the units devoted to living quarters for tenants and guests are used for furnishing accommodations for transients, or the building constituting such hotel; or (2) furnished nonhousekeeping accommodations, whether or not in a hotel, which are rented as rooms without kitchen privileges or facilities for cooking (but not in a suite of two or more rooms); or (3) any building used as a licensed rooming house." [7]

It will be observed that the Act of June 30, 1950, decontrolled nonhousekeeping housing accommodations rented as rooms and any building used as a rooming house when any of the housing accommodations in such building were decontrolled. The Senate Report accompanying the bill stated that one change made in the existing law "removes controls from furnished nonhousekeeping rooms." [8] The statement of the managers on the part of the House of Representatives, accompanying the conference report, said certain changes in the bill were made "to make it clear that where any housing in a building used as a rooming house are decontrolled * * * the building should also be decontrolled." [9] It seems clear that after June 30, 1950, rooming houses and furnished rooms in such houses were not subject to rent control. The Act of June 30, 1951, made no substantial change. It expressly excluded from control "furnished nonhousekeeping accommodations," and "any building used as a licensed rooming house." [10] Therefore, from June 30, 1950, to July 31, 1953, which covers the period for which appellee recovered for alleged overcharges of rent, rooming houses were not subject to rent control. Was Hecht's Hotel subject to control during that period?

Hecht's Hotel was not a hotel within the meaning of that word as defined in the rent act. Hotel was defined somewhat differently in the acts of December 2, 1941,[11]

3. Grady v. Prewitt, D.C.Mun.App., 99 A.2d 755.

4. Wilner v. Vartanian, D.C.Mun.App., 55 A.2d 88.

5. Code 1951, § 45–1602(3) (a).

6. Code 1951, § 45–1602(5) (a).

7. Code 1951, Supp. II, § 45–1611(a).

8. Senate Report No. 1854, 81st Cong., 2d Sess.

9. H.R.Rept.No.2354, 81st Cong., 2d Sess.

10. Code 1951, Supp. II, § 45–1611(a).

11. 1940 Code, Supp. VII, § 45–1602(2) (e).

and April 19, 1949,[12] but both definitions used the expression "an establishment operating under a hotel license". Hecht's Hotel operated under a lodging house license. It had 37 nonhousekeeping furnished rooms and accommodated both transient and permanent guests. No dining room was operated in connection with it.

Neither the original rent act nor any of the amendatory acts used the term "lodging house" although apartments, hotels, rooming and boarding-houses were specifically mentioned. We know of no legal or actual difference between a rooming house and a lodging house. Both serve essentially the same purpose of supplying furnished room accommodations. Webster's New International Dictionary (2d ed. Unabridged), defines lodging house as "a house where lodgings are provided and let," and defines a rooming house as "a house in which furnished rooms, or apartments, are let to lodgers; a lodginghouse." For licensing purposes the District of Columbia regulations give the following definitions:

"The term 'rooming house' means any building or part thereof, other than a hotel, containing sleeping accommodations occupied for a consideration by or offered for occupancy for a consideration to 5 or more persons who are not members of the immediate family of the owner or lessee of such building or part thereof, and which accommodations are not under the exclusive control of the occupants thereof."

"The term 'lodging house' means any building or part thereof, other than a hotel, containing sleeping accommodations occupied for a consideration by or offered for occupancy for a consideration to 5 or more transients who are not members of the immediate family of the owner or lessee of such building or part thereof, and which accommodations are not under the exclusive control of the occupants thereof." September 14, 1948, as amended October 12, 1948, No. 301,260/10.

It will be observed that under the licensing regulations the only difference between a lodging house and a rooming house is that the former caters to transients to some extent while the latter may or may not. On the other hand, the District of Columbia zoning regulations, effective September 1, 1953, make no distinction between the two establishments. Those regulations contain the following definition:

"Lodging or rooming house: A dwelling providing for compensation lodgings for three or more roomers."

In view of the great similarity between rooming houses and lodging houses and the fact that the term lodging house was never used in the rent act, we conclude that the rent act made no distinction between the two, that where the act used the term rooming house such term included lodging house, and that Congress in decontrolling rooming houses did not intend that control should remain on those establishments which for certain purposes are classified as lodging houses. We are strengthened in this conclusion by the Senate Report accompanying the 1951 rent act, which stated: "As under present law transient hotel accommodations, rooming houses, boarding houses, and lodging houses are not subject to controls."[13] Accordingly, we hold that the rented premises were not subject to rent control after June 30, 1950, and the judgment must be reversed.

Reversed.

12. Code 1951, § 45–1602(2) (e).

13. Senate Rept. No. 442, 82d Cong., 1st Sess.